## S96Q1363. POGUE et al. v. OGLETHORPE POWER CORPORATION et al.

(477 SE2d 107)

THOMPSON, Justice.

In *Pogue v. Oglethorpe Power Corp.*, 82 F3d 1012 (11th Cir. 1996), the United States Court of Appeals for the Eleventh Circuit certified the following state law question concerning tort immunity for premises owners paying workers' compensation premiums:

Is a "premise owner" entitled to the statutory tort immunity provided by OCGA § 34-9-11 if the premise owner has purchased a "wrap-up" insurance policy to provide workers' compensation insurance coverage for all on-site contractors and subcontractors?

We answer this question in the negative.

David and Denise Pogue brought a negligence action against Oglethorpe Power Corporation (Oglethorpe) and Rome Employment Services, Inc. Pogue was working as a cement finisher in a hydroelectric power facility that was under construction, and Oglethorpe was the majority owner of the project. In its contract with Power Plant Constructors (Power Plant), the general contractor and Pogue's employer, Oglethorpe agreed to provide a "wrap-up" insurance policy to provide workers' compensation insurance to all contractors and subcontractors on the project.

Oglethorpe conducted its own safety program. To carry out the program, Oglethorpe hired four safety inspectors. These inspectors represented Oglethorpe at the construction site.

On the date of the accident, Pogue was working in a room with several holes in the floor. Some of the holes were covered and some were not. Pogue left the room, stepping over a piece of plywood covering one of the holes. When Pogue reentered the work area, the plywood gave way and he fell 48 feet, sustaining serious injuries.

Although Pogue received workers' compensation benefits which came from the "wrap-up" policy purchased by Oglethorpe, he sued Oglethorpe in federal district court for negligent failure to provide a safe place to work and negligent inspection. Pogue's wife sued for loss of consortium. The district court found Oglethorpe immune as a provider of workers' compensation insurance under OCGA § 34-9-11, and granted it summary judgment. Concluding that Georgia case law does not provide clear guidance to resolve the question presented in this case, the Eleventh Circuit certified its question to this Court.

In *George v. Ashland-Warren, Inc.*, 254 Ga. 95 (326 SE2d 744) (1985), an employee of the Georgia Department of Transportation was working on a DOT project when he was struck and killed by

earth moving equipment. The equipment was owned and operated by Ashland-Warren, the general contractor on the DOT project. The DOT paid workers' compensation benefits to the employee's widow and Ashland-Warren reimbursed the DOT pursuant to an indemnification clause in the construction contract. The widow brought a wrongful death action against Ashland-Warren. Claiming it was entitled to statutory workers' compensation immunity, Ashland-Warren moved for summary judgment. The trial court awarded summary judgment to Ashland-Warren and the Court of Appeals affirmed.[1] This Court reversed, holding that the intent of the workers' compensation immunity statute, OCGA § 34-9-11,[2] was to provide statutory tort immunity to insurance carriers:

> Ashland-Warren's agreement was to indemnify and hold DOT harmless; it is not an insurance company and its agreement did not meet the requirements of a workers' compensation insurance policy. [Cits.] While such agreement would benefit the employer by providing reimbursement and would, according to Ashland-Warren, benefit the third party tortfeasor by providing tort immunity, it would not benefit the injured employee at all as a workers' compensation insurer would. Rather, it would in many instances take away the employee's cause of action against third-party tortfeasors which is so carefully reserved to the employee by OCGA § 34-9-11 itself. The tort immunity created by OCGA § 34-9-11 protects the employer of the injured employee, employees of that employer, and the employer's workers' compensation insurer. Ashland-Warren is not included.

Id. at 97.

Unlike the agreement in *Ashland-Warren*, the contract in this case required Oglethorpe to pay workers' compensation premiums. However, as in *Ashland-Warren*, the contract did not meet the

---

[1] The Court of Appeals ruled that Ashland-Warren was entitled to immunity as a co-employee and pretermitted the question of whether Ashland-Warren was entitled to immunity because it reimbursed the DOT. *George v. Ashland-Warren, Inc.*, 171 Ga. App. 556 (320 SE2d 586) (1984).

[2] OCGA § 34-9-11 (a) provides:
The rights and the remedies granted to an employee by this chapter shall exclude all other rights and remedies of such employee . . . at common law or otherwise, on account of such injury, loss of service, or death; provided, however, that no employee shall be deprived of any right to bring an action against any third-party tort-feasor, other than an employee of the same employer or any person who, pursuant to a contract or agreement with an employer, provides workers' compensation benefits to an injured employee, notwithstanding the fact that no common-law master-servant relationship or contract of employment exists between the injured employee and the person providing the benefits . . . .

requirements of a workers' compensation insurance policy. While it is true that the contract benefitted the employer by providing for the payment of premiums, the bottom line is that the contract did not benefit Pogue as a workers' compensation insurance contract would. Id. We conclude that Oglethorpe did not provide workers' compensation benefits to Pogue by purchasing a "wrap-up" workers' compensation insurance policy.

Nor can it be said that Oglethorpe provided such benefits by conducting an on-site inspection program. Oglethorpe cannot be permitted to create tort immunity on its own behalf by undertaking an inspection of its premises. *George v. Ashland-Warren, Inc.*, supra at 97. See generally *Yoho v. Ringier of America*, 263 Ga. 338, 341 (434 SE2d 57) (1993). After all, Pogue's lawsuit is predicated, in part, upon Oglethorpe's alleged negligent inspection.

*Fred S. James & Co. v. King*, 160 Ga. App. 697 (288 SE2d 52) (1981), upon which Oglethorpe relies, is inapposite. That case involved an insurance broker which administered a self-insured employer's workers' compensation program to the extent that it was deemed the employer's alter ego. This case does not involve the same identity of interests.

*Question answered. All the Justices concur, except Fletcher, P. J., and Sears, J., who dissent.*

FLETCHER, Presiding Justice, dissenting.

Because the majority ignores the plain language of the workers' compensation act in limiting tort immunity to insurers, I dissent.

OCGA § 34-9-11 expressly provides tort immunity to "any person who, pursuant to a contract or agreement with an employer, provides workers' compensation benefits to an injured employee." The legislature clearly intended for this language to be read more broadly than simply covering a narrower class of "insurers." The identical language describing "any person" is contained within section 34-9-1 (3)'s definition of "employer." OCGA § 34-9-1 (3) further states that "this term shall include his insurer as far as applicable." Had the legislature intended the "any person" language to extend immunity only to insurers, then the inclusion of "insurers" separately from "any person" would not have been necessary. Construing OCGA § 34-9-11 as limiting immunity only to insurers renders meaningless this additional language and, thus, is contrary to well-settled rules of statutory construction.[3]

The broad language in *George v. Ashland-Warren, Inc.*[4] that the

---

[3] *State of Ga. v. C. S. B.*, 250 Ga. 261, 263 (297 SE2d 260) (1982) (courts must construe statutory language so as not to render it meaningless or mere surplusage).

[4] *George v. Ashland-Warren, Inc.*, 254 Ga. 95 (326 SE2d 744) (1985).

"any person" language "was intended to provide tort immunity to workers' compensation insurers" must be read in the context of that decision, in which no insurer was involved. The relevant contract in that case was an indemnity agreement, for which there is no statutory support. In the present case, however, the relevant contract is a workers' compensation insurance policy within the meaning of OCGA § 34-9-120. This policy benefits Pogue exactly as any other workers' compensation insurance policy would.[5] Furthermore, the persuasiveness of the *Ashland-Warren* decision is undercut by the fact that its rationale was overturned in part by statute. OCGA § 34-9-23, enacted in 1994, no longer permits courts to liberally construe the act solely in favor of employees.

Here, Oglethorpe Power assumed obligations by contract that are no different in substance from the obligations undertaken by service agencies and insurance carriers that are without a doubt entitled to immunity when they face allegations of negligent inspections.[6] Oglethorpe Power obtained a policy of workers' compensation insurance to insure prompt payment of benefits to injured workers. Additionally, Oglethorpe Power retained specialized safety personnel to perform inspections and make recommendations for improvements in workplace safety. There is no logical basis for treating Oglethorpe Power differently in terms of immunity given the statutory language that "any person" who provides benefits will not be subject to suit in tort.

I am authorized to state that Justice Sears joins in this dissent.

DECIDED NOVEMBER 4, 1996 —
RECONSIDERATION DENIED NOVEMBER 22, 1996.

*Davis, Gregory, Christy & Forehand, Hardy Gregory, Jr., Mundy & Gammage, John S. Husser, Gerry E. Holmes,* for appellants.

*S. Lester Tate III, Long, Aldridge & Norman, George Darden,* for appellees.

---

[5] See, e.g., OCGA § 34-9-122 (defining type of policy to be issued); OCGA § 34-9-221 (establishing procedure for paying income benefits and penalties for delinquent payments).

[6] *Hinkley v. Building Material Merchants Assn.*, 187 Ga. App. 345 (370 SE2d 201) (1988); *Fred S. James & Co. v. King*, 160 Ga. App. 697 (288 SE2d 52) (1981); *Newton v. Liberty Mut. Ins. Co.*, 148 Ga. App. 694 (252 SE2d 199) (1979).